## THE STATE v. JOE PIESKI, Appellant.

### Division Two, March 18, 1913.

1. **APPEAL: Filing Transcript.** Upon an appellant from a judgment condemning him of any kind of felony except a capital offense, as upon an appellant in a civil case, the statute places the duty of causing to be filed in the office of the clerk of the Supreme Court a perfect transcript. Such an appellant must not only himself see that his transcript is transmitted to and filed in the office of the clerk of the Supreme Court, but he must also see that it is filed and entered on the docket in the proper manner.

2. ————: ————: **In Criminal Case: No Payment of Filing Fee.** The appeal of a defendant, prosecuted and convicted of a felony other than a capital offense, there being no order permitting him to prosecute his appeal as a poor person, will be dismissed if he does not, within one year after the appeal has been granted, pay or tender to the clerk of the Supreme Court the fee of ten dollars required by Sec. 10697, R. S. 1909; and the timely filing of his bill of exceptions in the trial court, and the certification of the transcript by the clerk thereof to the Supreme Court, and the lodging of the same with the clerk of the Supreme Court, are not enough, but he must perfect his appeal by the payment or tender of said filing fee, or show good cause for the delay.

3. ————: ————: ————: **Filing.** The technical meaning of the word "file" is legion; as the facts differ, so does its meaning differ. The mere lodging of a transcript with the clerk of a court does not of itself constitute a filing, if there is a statutory condition precedent remaining to be performed. Nor does the placing of a file-mark on the paper, with the *teste* of the clerk, constitute a filing, but is only evidence of a filing; but absent such file-marks there is no evidence that the transcript has been filed in the Supreme Court or the appeal perfected in the manner required by the statute, Sec. 5313, R. S. 1909.

4. ————: ————: ————: **As Poor Person.** An order of the trial court permitting an appellant to prosecute his appeal as a poor person will not of itself bind the Supreme Court and relieve the appellant of the duty of paying the filing fee required by the statute. It may be persuasive, upon a timely application to the Supreme Court for permission to prosecute the appeal as a poor person, but not binding, because there is no express statute upon the subject and it is only by the vaguest statutory inference alone that it can be said that the Supreme Court has the right to permit the prosecution of an appeal without the payment of costs; and in any event, an application to prosecute as a poor person ought to be made in the Supreme Court before the lapse of the one year designated by said Sec. 5313, R. S. 1909.

## Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin,* Judge.

APPEAL DISMISSED.

*Henry M. Walsh* for appellant.

*John T. Barker,* Attorney-General, and *Thomas J. Higgs,* Assistant Attorney-General, for the State.

## ON MOTION TO DISMISS APPEAL.

PER CURIAM.—Motion to dismiss appeal for failure to perfect same within one year from the date of the granting thereof having been filed on proper and timely notice thereof given by the State, the question is before us.

The appeal herein was granted by the circuit court of the city of St. Louis on the 30th day of September,

1910. The bill of exceptions was duly filed, and on the 28th day of April, 1911, as shown by the *teste* of the circuit clerk, the transcript was forwarded to the clerk of this court for filing. The said transcript has not been filed for the reason that appellant has not paid or tendered the costs in this court, or "docket fee" (so-called), of ten dollars provided for by section 10697, Revised Statutes 1909. This transcript has been lodged with the clerk of this court by the act of the circuit clerk in certifying the same here, but no file-marks have been placed thereon, nor has the cause been docketed for hearing; all by reason of the failure of appellant to pay the said sum of ten dollars, here-inafter, for convenience only, called a "docket fee."

Section 5313, Revised Statutes 1909, provides that, except in capital cases, a failure to perfect an appeal in a felony case within twelve months from the date of the granting of the same shall be grounds for the dismissal of such appeal, unless good cause for the delay shall be shown. No good cause to take the case out of the operation of the statute has been shown, if in fact there has been a failure to *perfect* the appeal. Whether there has been a failure so to perfect the appeal turns on the question of whether the payment or tender of the docket fee of ten dollars is a condition precedent to the perfecting of an appeal in a criminal case. Is an appeal in a criminal case (where no order has been made permitting appellant to prosecute an appeal as a poor person) perfected when the clerk of the court *nisi* certifies and forwards to the clerk of this court a transcript of the record and proceedings, whether the "docket fee" be paid or not?

By statute the duty enjoined upon the circuit clerk differs according to whether the appeal be a capital felony or an ordinary felony. In a capital case the clerk is required of his own motion "without delay" to make out and forward a full transcript of the record to the clerk of this court. [Sec. 5308, R. S. 1909.]

But in other felony cases appealed, such as the instant case, no such duty is enjoined on the clerk. The statute simply provides for the clerk to act in this behalf only when requested so to do by the appellant or plaintiff in error. "Such transcript," says the statute, "shall *be made out, certified and returned,* on the application of the appellant or plaintiff in error, *as in civil cases,* except that the costs of the transcript shall not be required in advance." [Sec. 5309, R. S. 1909.]

Being thus relegated to the statute governing appeals in civil cases for the rule of procedure, in perfecting appeals in a criminal case (of the kind at bar) and turning to that statute, we find it required by section 2047, Revised Statutes 1909, that "the appellant shall perfect his appeal in the manner and within the time prescribed in the next succeeding section." Section 2048, to which special reference is made by the language above quoted, provides that "the appellant or plaintiff in error shall cause to be filed in the office of the proper appellate court, . . . a perfect transcript of the record and proceedings in the cause, or in lieu of such transcript, a certified copy of the record entry of the judgment," etc. We quote these statutes as showing that in an appeal in an ordinary felony case the appellant in order to reach this court, after leaving the court *nisi,* must walk in the foot-prints of a civil appellant, though he is allowed to travel more slowly. [Sec. 5313, supra.] Upon the appellant in the case at bar, as upon a civil appellant, the statute placed the duty of *"causing to be filed in the office of the proper appellate court a perfect transcript."* This duty of initiative is not placed on the clerk of the lower court, but it is saddled by statute upon the appellant, except in appeals in convictions for capital offenses, when such latter clerk acts of his own volition, by statutory mandate. In other words, while the clerk is required to act, in acting he does so upon the request and at the direction of the appellant. Nor does section

2053, Revised Statutes 1909, when carefully read, militate against this view. Appellant must not only himself see that his transcript is transmitted to and filed in the office of the appellate court, but it is his duty to see that it is filed and entered on the docket in the proper manner. [3 Cyc. 131, citing Furthman v. McNulta, 182 Ill. 310; Grunow v. Menge, 36 La. Ann. 925; Walton v. Campbell, 51 Neb. 788.]

We need not here discuss the technical meaning of the word "file;" because that meaning is legion; as the facts differ, so also does the meaning differ. That ordinarily "a paper is said to be filed when it is delivered to the proper officer, and by him received to be kept on file" (Bouvier's Law Dict.), we do not doubt. That an "actual delivery of the paper to the clerk without regard to any action that he may take thereon," may also be a filing, we do not question. [Grubbs v. Cones, 57 Mo. 83; State v. Hockaday, 98 Mo. l. c. 593.] If the party offering to file a paper or legal document, has, as a condition precedent, done his full duty and performed all the legal obligations incumbent on him, he ought not of course to suffer from the mere arbitrary act of the clerk or other officer who may refuse to perform a duty on his part. Nor does the law require such party to suffer, or hold him in default. But while anything remains to be done as a condition precedent, by him who, offering to file, actually delivers to the officer the custody of the document, the document cannot be said to be filed, though it be lodged with the officer, unless the officer receive it to be filed and waive (if the waiver be within the officer's power) the condition precedent. The placing of a file mark on a paper, with *teste* of the clerk thereof, is, we concede, not a filing, but merely evidence that the paper has been filed. So much on this point is said because the transcript in the instant case has been lodged with the clerk of this court, but our clerk has refused, for lack of payment in advance of the

costs provided for in section 10697, Revised Statutes 1909, to receive such transcript as filed, or to indorse thereon the evidence of its being filed with him. Section 10697 is as follows:

"Clerks of the Supreme Court and Courts of Appeals, in lieu of other fees, shall severally be allowed and paid by the appellant or plaintiff in error a fee of ten dollars, which shall include all the costs in the case, including a certified copy of the opinion and mandate to the court from which said cause shall be sent, and all fee bills and executions issued in said cause: *Provided,* that nothing herein shall be construed to apply to any one who was permitted, as provided by law, to sue as a poor person. If the judgment of the Supreme Court or Courts of Appeals is in favor of the appellant or plaintiff in error, the clerk shall tax the fee provided herein in favor of said appellant or plaintiff in error, and it shall be their duty to issue fee bills or writs of execution in all cases in favor of the successful party, after the adjournment of each term of the court, including therein all the costs that have accrued in the Supreme Court or Courts of Appeals, and receiving for said writs or fee bills the fee now provided by law."

That this section contemplates the payment in advance of the costs which shall accrue here as liquidated by the enactment at the sum of ten dollars, there can be but little question. We have in mind, of course, the statutory exception in the section written as to those suing *in forma pauperis.*

There is no express statutory authority in this State for prosecuting an appeal in a criminal case *in forma pauperis.* In the courts *nisi* it is but stating a ridiculous truism to say that one being prosecuted for a felony, has no occasion to invoke the privilege. By the vaguest statutory inference alone can it be said that this court has the right, even in a proper case properly presented, to permit the prosecution of an

appeal without the payment of costs. These inferences
arise only from the provisions of our laws providing
for the duties of official stenographers in the circuit
courts of the State. [Secs. 11257, 11263, and 11246, R.
S. 1909.] By virtue of these sections the trial court
in case of an appeal or suing out of a writ of error
in a criminal case, if "it shall appear to the satisfac-
tion of the court that the defendant is unable to pay
the costs of such transcript for the purpose of making
the appeal, the court shall order the same to be fur-
nished, and the stenographer's fee for making the same
shall be taxed against the State or county, as may be
proper." But since orders permitting actions to be
prosecuted *in forma pauperis* are not binding except
in the court wherein such order is made (Collett v.
Frazier, 3 Jones's Eq. [N. C.] 398; Oakes v. High, 32
N. Y. Supp. 289; 11 Cyc. 204), an order thus made by
the trial court would not of itself bind this court on
appeal and relieve the appellant of the duty of paying
the costs of this court. It might be persuasive, upon
a timely application made here for permission to pros-
ecute an appeal in a criminal case as a poor person,
but not binding. But application to prosecute as a
poor person on appeal here ought to be made before
the lapse of the one-year period limited by section
5313, supra.

The duty of paying this liquidated sum of ten dol-
lars, is, we think, from what has been paid, just as
imperatively enjoined upon an appellant in a criminal
case as it is upon an appellant in a civil case. Such
appellant has not perfected his appeal until he has pro-
duced it in the appellate court so that it may be heard.
He cannot so produce it, clearly, till he has filed it.
And the clerk is not required to file it till the appellant
has complied with the condition precedent noted, viz.,
the payment (or tender in case of arbitrary refusal)

of the costs of this court liquidated by section 10697, supra, at the sum of ten dollars.

The same conclusion must be reached for another reason, technical, it is true, but logical and cogent: To be perfected *within the purview* of section 5313 supra, the transcript must be filed. The indorsement of the filing by our clerk is the proof of the fact that it was filed, and thus the last step having been taken that the appeal has been *perfected.* Absent such file-marks, there is no evidence before us of filing, and of perfecting the appeal, and thus by a different road we reach the same conclusion. If the absence of this evidence of filing in fact, is not due to appellant's dereliction, but chargeable to any arbitrary refusal of the clerk to act, appellant being *rectus in curia* (of which there is before us in the case at bar no charge or even hint), then a timely showing of these things would obviate dismissal, and timely action to compel the clerk to perform his duty, would correct the default.

We conclude that the motion to dismiss the appeal is well taken, and the appeal ought to be dismissed. It is so ordered.